# Forney *v.* Calhoun County.

*Bill in Equity to enjoin Action at Law, and enforce Equitable Estoppel.*

1. *Dedication of land; waiver of condition; equitable estoppel.*—Defendant having agreed to donate his undivided one-seventh interest in

[Forney v. Calhoun County.]

a block of land to the county, as a site for a court-house, on condition that the building should be erected in the centre of the block; and the county, after acquiring the remaining interests, having proceeded to erect a court-house, but not in the midde of the block, at a cost of nearly $15,000, with the knowledge of the defendant, and without objection or active interference on his part until after the completion of the building; *held*, that his conduct amounted to an implied waiver of the condition, and an equitable estoppel against the assertion of his legal title as against the county.

APPEAL from the Chancery Court of Calhoun.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on the 16th July, 1887, in the name of Calhoun County, against John H. Forney; and sought to enjoin an action of ejectment, which said Forney had instituted, to recover an undivided one-seventh interest in a block of land in the town of Jacksonville, on which the court-house now stands. The opinion states the material facts.

KELLY & SMITH, and JAS. E. WEBB, for appellant Forney.

BROTHERS, WILLETT & WILLETT, for Calhoun County.

SOMERVILLE, J.—In *Forney v. Calhoun County*, 84 Ala. 215, we sustained the equity of the present bill, which was filed to enjoin an action of ejectment brought by the appellant, Forney, against the appellee, for a certain undivided interest in land alleged to have been dedicated by the owner as a site for a court-house. We, on that appeal, sustained the decree of the chancellor overruling the demurrer to the bill, and refusing to dissolve the injunction granted against the ejectment suit.

Upon the submission of the cause on pleadings and proof, the chancellor, declining to make the injunction perpetual, retained the bill, and ordered a reference to the register to ascertain what would be a reasonable compensation in damages for the appropriation by the complainant of the defendant's interest in the land. The plain and declared effect of the decree is to hold that the testimony is insufficient to support the theory of a dedication of the land to the public use, or to raise an estoppel *in pais* against the owner, who now asserts his claim to the title. The case is now before us on cross-appeals, each party making separate assignments of error on the same transcript, as authorized by our Rules of Practice.—Rule No. 2; Code, 1886, p. 800.

[Forney v. Calhoun County.]

After a critical examination of the testimony, we think, the chancellor erred in not finding that the conduct of the defendant, Forney, fairly estops him from denying the fact of dedication.

The defendant admits, in his answer to the bill, that he appeared before the court of county commissioners, at a meeting called to consider the question of building a court-house, and agreed to give them his undivided one-seventh interest in the property, called the "Forney Block," for a court-house site, *on condition* that the county would erect the court-house building in the *centre* of the block. Two members of the court testify, that the offer to dedicate was unconditional; but the defendant, and the two other members of the court, testify that a requirement was made as to the location of the building in the centre of the block; and we incline to believe that the preponderance of proof satisfactorily supports the defendant's statement on this point. It is thus clearly proved that there was an unequivocal intention on the defendant's part to dedicate his interest in the land, either unconditionally, or else on the condition stated— probably the latter. The defendant himself asserts that he was very desirous of getting a new court-house built on this block; that he made a bid for the contract, and urged the consummation of the enterprise. The feeling of competition between the towns of Anniston and Jacksonville was running high, and the commissioners court was closely divided in its sympathies between these competing localities. The defendant resided at the latter place, and owned property there, the value of which would be enhanced by keeping the county-seat permanently situated at Jacksonville. We can not discover from the testimony that his one-seventh interest in the property at that time was very valuable. Other interests of like quantity had been purchased for seventy-five dollars each, by the town of Jacksonville, for the purpose of effecting this dedication.

Acting on the faith of the promise to dedicate, the commissioners court accepted the property, with the understanding that it was to cost the county nothing as a court-house site. They appointed a building committee, consisting of two of its members, Watson and Stewart, with full authority to superintend the location and construction of the building. They took possession of the lot, and commenced the construction of the court-house building on October 23d, 1885, and finished it June 29th, 1886—after eight months

30

of open and continuous occupancy—at the expense of about fourteen thousand dollars to the county. The defendant saw the building going up day by day during this time— frequently passing and repassing it while in course of erection. One or the other of the building committee was on the ground every day directing the work. The defendant admits, nevertheless, and both Watson and Stewart testify, that during all this time he never went near to forbid the workmen or contractors to continue the work, or to order the building committee to desist. He never said a word to either of them on the subject, or expressed dissatisfaction to them, at the selected location on the east side of the block. The defendant had read in one of the Jacksonville papers that the last lot had been presented to the county by the people of Jacksonville, and was to cost the county nothing. He admits in his testimony, that "some time after the work commenced," exactly how long is not stated, he knew that Watson had charge of the work. But, independently of this, he could easily have ascertained who was in charge of it by inquiring on the premises, and this he neglected to do. Every additional brick added to the structure was an argument against the defendant's silence, and each stroke of the carpenter's hammer a voice commanding him to speak. Yet the record shows that he totally failed to give notice of his dissatisfaction to the building committee, or to the commissioners court, until this suit was brought on August 30th, 1886, or two months after the work of construction had been completed.

It is true that defendant says he protested to one of the leading citizens of Jacksonville, who was active in promoting the enterprise, that he was dissatisfied with the location of the building, and that he told Anderson, a member of the commissioners court, whom he met on one occasion in the town of Oxford, that he objected to the location of the building anywhere except in the centre of the block, unless he was paid for his property; but this objection was never brought to the attention of the commissioners court, or to that of the building committee who were in charge of the work. At the same time, he observed to Anderson, that "they could *go on and improve his property*, as much as they desired," as it "would only *make him the safer* about getting his pay for it."

We have no hesitation in holding, upon this state of facts, that it was gross negligence on the part of the defendant

[Foster v. White.]

not to have forbidden the erection of the building after he discovered the purpose to locate it on the east side of the block, instead of in the centre of it. He could easily have visited the premises, and ascertained who was in authority. His failure to do so indicated a deliberate purpose not to interfere with the erection, and the motive of this silence is explained by his declaration to Anderson. He was bound to know that the commissioners were induced by his conduct to believe that he had waived his objection as to the location of the building. What he said to Grant and Anderson was no notice of his dissatisfaction, or of any purpose to revoke his dedication, or insist on his condition. Under the principles announced in *Forney v. Calhoun County*, 84 Ala. 215, the condition was obviously waived, and the defendant was estopped to deny an unconditional dedication of the land, or to afterwards assert any title to it.

The decree of the chancellor will be reversed, and a decree will be rendered in this court, adjudging the complainant to be entitled to the relief prayed for in the bill, on the principle of dedication, and decreeing a perpetuation of the injunction against the prosecution of the ejectment suit by said Forney. The costs of appeal will be paid by the defendant Forney, and the costs in the lower court will be equally divided between the parties complainant and defendant.

Reversed and rendered.