# Jones *v.* Atkinson.

### Statutory Detinue for Mule.

1. *Ratification of agent's unauthorized act.*—An agent having made, without authority, an exchange of a mule belonging to his principal for a horse, a claim and assertion by the principal of right and title to the horse, with knowledge of the facts, is a ratification of the unauthorized exchange; and such ratification, made with knowledge of the facts, is irrevocable.

APPEAL from the Circuit Court of Wilcox.
Tried before the Hon. JOHN K. HENRY.
This action was brought by R. W. Atkinson, against D. P. Jones, to recover " one mouse-colored mule, named *John*, of the value of $60, with the value of the hire or use thereof during the detention, from the 1st January, 1879;" and was commenced on the 19th May, 1879. The defendant pleaded *non detinet*, in short by consent; and the trial was had on issue joined on that plea. On the trial, as the bill of exceptions

[Jones v. Atkinson.]

shows, it was proved that, in January, 1878, the plaintiff hired or rented a mule which he owned, named *Jerry*, to one Pritchett, for the year 1878, for $25; that in August of that year, with the knowledge and assent of the plaintiff, Pritchett traded said mule with one Henderson, for the mule now sued for; that a short time afterwards, during the same year, Pritchett traded said mule with one Lindsey Clanton for a mare, called the "Clanton mare," and that Clanton afterwards sold or traded said mule to the defendant in this suit.

As to the terms of the original contract between the plaintiff and Pritchett, there was some conflict in the testimony; the plaintiff testifying that he rented the mule for the year, for $25, and offered to sell it for $90 in cash, which offer Pritchett declined to accept; while Pritchett testified that he was to pay $90 for the mule in the fall of the year, or $25 for the hire if he failed to pay the $90. The plaintiff admitted that the exchange of the mules *Jerry* and *John* was made by Pritchett with his knowledge and consent, but he denied that he had authorized the exchange of the mule *John* for the Clanton mare; while the evidence adduced by the defendant tended to prove that the plaintiff had ratified said exchange, if he did not authorize it in advance. Pritchett testified, on behalf of the defendant, among other things, that after he had traded for the mule *John*, "he desired to get a mare, and spoke to plaintiff about it, and plaintiff told him to trade as much as he pleased;" also, that after he had traded said mule for the Clanton mare, "plaintiff saw him in possession of the mare, but never said anything in reference to this trade; that in October, 1878, finding that he would not be able to pay the $90, as agreed, he offered to give up the mare to plaintiff, and to pay the $25 for hire; that plaintiff said he wanted a mule, and not a mare, and offered to assist witness in trading her for a mule, if he would fatten and improve her; that witness soon afterwards traded the mare to one Drinkard, for a mule, named *Beck*, and offered her to plaintiff; that plaintiff said he would take said mule, if he (witness) would pay the $25 hire; that he put said mule in plaintiff's stable, and left her with plaintiff, by plaintiff's direction, and soon afterwards, in satisfaction of the claim for hire, delivered to plaintiff twenty-three bushels of corn, at 75 c. per bushel, and agreed to pay the balance in the fall of 1879; that the mule remained in plaintiff's lot, or stable, for five or six weeks, when plaintiff sent her back to him, but he refused to take her, and she was left at his place of residence by the person who brought her, and turned into his inclosure." Another witness for the defendant testified, that plaintiff had offered to trade the "Clanton mare" to him while Pritchett

VOL. LXVIII.

[Jones v. Atkinson.]

had her; and another, that plaintiff told him to go and trade with Pritchett for the mare. The plaintiff himself testified, in rebuttal, " that he never authorized said Pritchett to trade the mule *John* ; that he never agreed to take the mule *Beck*, and never directed Pritchett to leave her in his lot, and that the said mare was never in his possession, and he never claimed her, or offered to trade her."

The defendant asked the court, in writing, to charge the jury as follows : "If the jury believe there was no sale of the mule *Jerry* by plaintiff to said Pritchett, but that it was a simple hiring of said mule by Pritchett ; and that when the mule *Jerry* was traded for the mule *John*, the plaintiff ratified said trade ; then, if they find that Pritchett afterwards traded the mule *John* for a certain mare, and, while said mare was in the possession of Pritchett, plaintiff claimed her as his property, and offered to trade her, this was, in law, a ratification of the trade of *John* for the mare, and he can not recover in this suit." The court refused to give this charge, and the defendant excepted to its refusal ; and he now assigns said refusal as error.

R. GAILLARD, and JNO Y. KILPATRICK, for appellant.

S. J. CUMMING, *contra*, cited 1 Parsons on Contracts, p. 49, and notes ; *Spaights v. Hawley*, 39 N. Y. 441.

STONE, J.—When we first considered the charge refused in this case, we doubted somewhat whether the hypothesis, or premises, justified the conclusion it invoked. Knowledge of the unauthorized act done is a necessary element in every binding ratification, and knowledge is not expressed in the charge, as one of the conditions on which a verdict for the defendant was claimed. We now think that, under the facts and circumstances shown in the evidence, that constituent was necessarily implied. The acts of ratification supposed in the charge are, that Atkinson, while said mare was in the possession of Pritchett, claimed her as his property, and offered to trade her. The undisputed facts are, that Pritchett had in his possession a mule called *Jerry*, which Atkinson claimed as his property ; that Pritchett traded the mule *Jerry*, for a mule named *John*, and Atkinson ratified the trade, and claimed the mule *John* as his property ; and that subsequently Pritchett traded the mule *John* for the mare, called the "Clanton mare." Now, the only claim Atkinson could have or assert to the mare, rested on the title he acquired by the exchange of the mule *John* for her. This claim, if he made it, rests alone on the fact that she stood in the place

[Jones v. Atkinson.]

of the mule *John*. If he claimed the mare, and if he asserted and attempted to exercise acts of ownership over her, this was a ratification, and being once made, he could not revoke it, unless it was made under a misapprehension of the facts. His right and claim to the mare had no foundation to rest on, unless he had parted with right and claim to the mule. He could not claim both, and claiming one, he renounced the other.

The case of *Meehan v. Forrester*, 52 N. Y. 277, presented a question of ratification *vel non*. Pinkney, as the attorney and agent of Bertine, was intrusted with the collection of a claim due the latter. Without any authority from his principal, Pinkney took from the debtor a deed to lands, absolute on its face, but intended as security only. The Court of Appeals said : "There was no dealing on the subject between the plaintiff [debtor] and Bertine, except through Pinkney. The evidence justifies the inference, that the deed was received by Pinkney for Bertine, in pursuance of the agreement made between Pinkney and the plaintiff, and delivered by Pinkney to Bertine. The agency of Pinkney was to collect the debt, not to purchase lands. When, under those circumstances, Pinkney delivered to Bertine the deed obtained from the plaintiff, it was the duty of Bertine to inquire, and of Pinkney to communicate, under what arrangement the deed had been obtained. In the absence of any evidence to the contrary, the presumption is that these duties were performed. If not, and Bertine received the deed blindly, without receiving or making any inquiry, he must be deemed to have confided the whole matter to his attorney, and adopted whatever arrangement the latter may have made to obtain the deed." *Carving v. Southland*, 3 Hill, 552. And a ratification once made, becomes irrevocable. Wharton on Agency, § 73 ; *Buck v. Jones*, 16 Texas, 461 ; *Clark v. Van Riemsdyk*, 9 Cranch, 153 ; *Seago v. Martin*, 6 Heisk. 308 ; Story on Agency, § 253 ; *Lee v. Fontaine*, 10 Ala. 755 ; *Fireman's Ins. Co. v. McMillan*, 29 Ala. 147 ; *Crawford v. Barkley*, 18 Ala. 270. In *Lee v. Fontaine*, *supra*, it is said, " Even the silence of the principal will, in many cases, amount to a conclusive presumption of the ratification of an unauthorized act." The charge asked should have been given.

Reversed and remanded.